UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JACQUELYN V.,                           :
              Plaintiff,            :
                                      :
              v.                      :          C.A. No. 21-314MSM
                                        :
KILOLO KIJAKAZI,                        :
Acting Commissioner of Social Security, :
              Defendant.            :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

       Plaintiff Jacquelyn V. ("Plaintiff"), a "younger individual," stopped working as a certified nursing assistant ("CNA") and scheduler on August 1, 2018, when her Family Medical Leave Act ("FMLA") leave ran out and her long-time employer terminated her employment due to frequent medical absences.  Tr. 975.  Based on the impairments of "amca (sic) vasculitis,[1] fibromyalgia, depression, anxiety, asthma, kidney stones, sinus issues, epilepsy, chronic fatigue and allergies," Plaintiff applied for Disability Insurance Benefits ("DIB") under 42 U.S.C. § 405(g) of the Social Security Act on July 9, 2019.  Tr. 1137.  Now pending before the Court is Plaintiff's motion for reversal of the determination of the Acting Commissioner of Social Security ("Commissioner") denying her claim based on the decision of an administrative law judge ("ALJ").  ECF No. 10.  The Commissioner has filed a counter motion for an order affirming his decision.  ECF No. 13.

       The unrebutted evidence of record establishes that Plaintiff suffers from "multiple chronic health issues."  Tr. 2206.  As the ALJ's decision acknowledges, these include:

---

[1] This is a reference to the impairment of "ANCA" vasculitis, an autoimmune disorder that providers believed for a time was the correct unifying diagnosis for some of Plaintiff's "complex" symptoms, including rhinosinusitis, ear infection, bronchitis, and nasal obstruction and perforation.  Tr. 825, 1804-05.

- chronic kidney stones/urinary tract issues resulting in multiple hospitalizations, surgical procedures, and the prescription of narcotic medication for excruciating pain;[2]

- fibromyalgia causing pain, with significantly positive trigger points;[3]

- chronic rhinosinusitis, involving asthma, septal perforation and a sinus condition, described as "atypical" and "quite unusual" resulting in pain, repeated surgical endoscopy and chronic sinus infections and other infections requiring antibiotics and steroids every two months;[4]

- migraine headaches that improved with medication but still recurred between two and four times per month, resulting in pain and the need to lie down in a darkened room;[5]

- an abnormal EEG with related symptoms (one syncope episode and tremors) resulting in treatment with antiepileptic medication;[6]

- carpal tunnel syndrome treated with splints;[7]

- a disorder of the knee resulting in pain, a brace, physical therapy and medication and requiring two injections;[8] and

---

[2] Tr. 15-16, 23 (referencing, e.g., Tr. 1928, 2294-2348); see Tr. 2231-41 (hospital records of visit for *inter alia* lower back pain and diffuse abdominal pain for which Plaintiff received morphine); Tr. 2452-70 (outpatient hospital records discussing kidney stone and related pain, which was treated with Dilaudid after Plaintiff "continue[d] to have pain after receiving morphine" and "may require [hospital] admission for pain control").

[3] Tr. 22-23 (referencing, e.g., Tr. 1806-07, 1833); see Tr. 783 (treating note signed shortly after ALJ's decision with summary *inter alia* of Plaintiff's fibromyalgia symptoms in period preceding ALJ's decision); Tr. 2149-2155 (progress notes dated December 27, 2018, from Affinity Rheumatology discussing fibromyalgia as the likely source of Plaintiff's complaint of "tingling feeling in arms and legs . . . [t]hen feels it give out").

[4] Tr. 14-15 (referencing, e.g., 2671-2684); see Tr. 1804 (specialist asked to give second opinion describes history of this serious condition, including that Plaintiff had been admitted to hospital twice due to asthma); Tr. 2670-81 ("atypical picture," "unusual in appearance," referring again for second opinion).

[5] Tr. 16-17 (referencing, e.g., Tr. 2529, 2532, 2534).

[6] Tr. 14 (referencing, e.g., Tr. 2107, 2109-10); see Tr. 2117 ("abnormal 3 day video EEG monitoring study from [January 21, 2020] to [January 24, 2020]"); Tr. 2623-24 ("evaluation of seizure vs. syncope" after Plaintiff lost consciousness).                                                    .

[7] Tr. 14 (referencing Tr. 2121); see 2535 (Neurohealth follow-up treatment record noting bilateral carpal tunnel syndrome and continued use of wrist splints).

[8] Tr. 23-24 (referencing Tr. 1813).

Case 1:21-cv-00314-MSM-PAS   Document 18   Filed 01/24/23   Page 3 of 25 PageID #: 2892

- significant depression and anxiety.[9]

Further, throughout the massive (2750 pages of material, most of which are medical records)
record are unrebutted statements by Plaintiff, corroborated by objective observations made by a
wide array of medical providers, describing pain and fatigue.[10]  No treating source suggests that
Plaintiff's complaints of pain and fatigue are the result of malingering; to the contrary, her
subjective complaints are consistently accepted by providers and treated, often aggressively such
as with intravenous morphine.  See, e.g., Tr 2452.

Despite this evidence, the ALJ relied on the non-examining expert consultants to find that
most of Plaintiff's impairments are not severe at Step Two – these include chronic kidney stones,
chronic rhinosinusitis/perforated septum/asthma and migraines, as well as others.[11]  Focusing
only on fibromyalgia, depression, anxiety and obesity, the ALJ found that Plaintiff retained the
residual functional capacity ("RFC")[12] to perform unskilled light work with postural and
environmental limitations.  Tr. 19.  To reach this finding, the ALJ did not credit Plaintiff's
subjective statements regarding the impact of pain and fatigue and rejected as not persuasive the

---

[9] Tr. 22, 26, 27-33 (referencing, e.g., 2648-69); see Tr. 2669 (anxiety severe, depression increased, mental status examination abnormal – "[s]he has been in bed since Friday").

[10] Mentioned in the treating record but largely ignored by the ALJ, and entirely ignored by the non-examining experts, is Plaintiff's abnormal menstrual bleeding, with related pain and fibroids.  Tr. 1847, 1859.  The ALJ mentions it in passing as a complaint Plaintiff raised in therapy.  Tr. 30.  The seriousness of this condition, which resulted in ongoing pain described to treating sources during the period in issue, e.g., Tr. 2648, is confirmed by the treating records of the gynecologist that were submitted to the Appeals Council.  Tr. 740-777.  These reflect that surgery had been recommended but postponed "due to recurring kidney stones," with the precise scope of the surgery to be determined, including whether hysterectomy would be appropriate.  Tr. 740, 750-52.

[11] See n.13 infra.

[12] RFC refers to "residual functional capacity."  It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting."  20 C.F.R. § 404.1545(a)(1).

RFC opinion of Plaintiff's longtime therapist whose notes reflect repeated clinical observations during therapy sessions of how pain and fatigue impacted Plaintiff's ability to function.  Tr. 33.

The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  Because I find that the ALJ's decision is tainted by error, that the Appeals Council was egregiously mistaken when it declined to consider the new and material evidence submitted to it, and that the proof is very strong, if not overwhelming, with no contrary evidence, I take the unusual step of recommending that the Court remand the case for an award of benefits pursuant to Sacilowski v. Saul, 959 F.3d 431, 433, 440-41 (1st Cir. 2020).

## I.     Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999).  Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).  The determination of substantiality is based upon an evaluation of the record as a whole.  Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st

Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). Thus, the Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31.

If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the law was incorrectly applied, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g). Allen v. Colvin, C.A. No. 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015) (citing Jackson v. Chater, 99 F.3d 1086, 1097-98 (11th Cir.1996)). If the Court finds that a judicial award of benefits would be proper because the proof is overwhelming, or the proof is very strong and there is no contrary evidence, the Court can remand for an award of benefits. Sacilowski, 959 F.3d at 433, 440-41; Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001); Randy M. v. Kijakazi, C.A. No. 20-329JJM, 2021 WL 4551141, at *2 (D.R.I. Oct. 5, 2021), adopted (D.R.I. Oct. 28, 2021).

## II.  **Disability Determination**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(i); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A.   **The Five-Step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 404.1520(a).  First, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  Id.  Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled.  Id.  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled.  Id.  Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled.  Id.  Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted.  Id.  The claimant bears the burden of proof at Steps One through Four, but it shifts to the Commissioner at Step Five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003).

### B.    Step Two Determination

The disability analysis ends at Step Two if the claimant's medically determinable impairments have not been "severe" for a consecutive twelve-month period.  20 C.F.R. § 404.1520(a)(4)(ii).  "An impairment . . . is not severe if it does not significantly limit [the claimant's] . . . mental ability to do basic work activities."  20 C.F.R. § 404.1522(a).  Basic work activities include "[u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting."  20 C.F.R. § 404.1522 (b)(3)-(6).  Non-severity is found where the medical evidence establishes no more than a slight abnormality that would have only a minimal effect on an individual's ability to work.  SSR 85-28, 1985 WL 56856, at *2 (Jan. 1, 1985).  Step Two is a screening device used to eliminate applicants "whose

impairments are so minimal that, as a matter of common sense, they are clearly not disabled from gainful employment." McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1122 (1st Cir. 1986); Burge v. Colvin, C.A. No. 15-279S, 2016 WL 8138980, at *7 (D.R.I. Dec. 7, 2016), adopted sub nom., Burge v. Berryhill, 2017 WL 435753 (D.R.I. Feb. 1, 2017).  At Step Two, Plaintiff has the burden to show that she had a "medically determinable" physical or mental impairment(s) that significantly limited her ability to do basic work activity at the relevant time. Luz R. v. Saul, C.A. No. 19-00307-WES, 2020 WL 1026815, at *6 (D.R.I. Mar. 3, 2020), adopted by Text Order (D.R.I. Mar. 30, 2020).

Courts generally find that an error at Step Two in rejecting an impairment as severe is harmless as long as the ALJ continues the analysis through the formulation of an RFC based on consideration of the symptoms and limitations caused by that impairment.  White v. Colvin, No. CA 14-171 S, 2015 WL 5012614, at *9 (D.R.I. Aug. 21, 2015) ("[w]ith an RFC determination appropriately supported by substantial evidence in the form of state reviewing opinions that took the limitations caused by these impairments into account, remand is not required").  However, when the ALJ's Step Two error results in a decision that ignores substantial evidence of symptoms that could reasonably result in the claimant being absent from work or off-task and unable to sustain full-time work, remand is appropriate.  Kimberly P. v. Kijakazi, C.A. No. 20-00375-MSM, 2021 WL 4932743, at *6 (D.R.I. Oct. 22, 2021), adopted, 2022 WL 112048 (D.R.I. Jan. 12, 2022); Audrey P. v. Saul, C.A. No. 20-92MSM, 2021 WL 76751, at *11 (D.R.I. Jan. 8, 2021), adopted, 2021 WL 309233 (D.R.I. Jan. 29, 2021).  On the other hand, if the ALJ found at least one severe impairment at Step Two and considered the cumulative effect of all impairments in crafting the RFC, the Step Two error may be deemed harmless.  Robles Soto v. Saul, Case No. 3:18-cv-30134-KAR, 2019 WL 4543219, at *16 (D. Mass. Sept. 19, 2019).

### C.     Opinion Evidence

An ALJ must consider the persuasiveness of all medical opinions in a claimant's case record.  See 20 C.F.R. § 404.1520c.  The most important factors to be considered when the Commissioner evaluates the persuasiveness of a medical opinion are supportability and consistency; these are usually the only factors the ALJ is required to articulate.  20 C.F.R. § 404.1520c(b)(2); Jones v. Berryhill, 392 F. Supp. 3d 831, 839 (M.D. Tenn. 2019); Gorham v. Saul, Case No. 18-cv-853-SM, 2019 WL 3562689, at *5 (D.N.H. Aug. 6, 2019).  Supportability "includes an assessment of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or . . . medical finding[] is with other evidence in the claim."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5859 (Jan. 18, 2017).  Other factors that are weighed in light of all of the evidence in the record include the medical source's relationship with the claimant and specialization, as well as "other factors" that tend to support or contradict the medical opinion or finding.  See 20 C.F.R. § 404.1520c(c)(1)-(5); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5859.  "A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not . . . persuasive regardless of who made the medical opinion."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5854.  If the ALJ has equally persuasive medical opinions or administrative findings about the same issue that are both supported and consistent but not the same, he is required to articulate the other factors that he relied on to resolve the conflict.  20 C.F.R. § 404.1520c(b)(3).

### C.     Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen v. Chater, 172 F.3d 31, 36 (1st Cir. 1999).  Congress has determined that a claimant will not be considered

disabled unless medical and other evidence (e.g., medical signs and laboratory findings) is furnished showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  To comply with this requirement, an ALJ must consider a claimant's statements about pain and determine the extent to which they are reasonably consistent with the objective medical evidence but also may not disregard them "solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms."  SSR 16-3p, 2017 WL 5180304, at *5 (Oct. 25, 2017); 20 C.F.R. § 404.1529(c)(3).

Although the law is clear that an individual's statements as to pain alone are not conclusive of disability, 42 U.S.C. § 423(d)(5)(A), remand is required if the ALJ fails properly to perform the pain analysis as long as the claimant has sustained her burden of presenting a competent treating source opinion endorsing both the diagnosis of an impairment that causes subjective pain, as well as evidence of function-limiting pain.  Tegan S. v. Saul, 546 F. Supp. 3d 162, 171 (D.R.I. 2021).  That is, hearing officers are "not free to discount pain complaints simply because the alleged severity thereof is not corroborated by objective medical findings."  Carbone v. Sullivan, No. 91-1964, 960 F.2d 143, 1992 WL 75143, at *5 (1st Cir. Apr. 14, 1992) (per curiam); see Carlos N. v. Kijakazi, C.A. No. 20-398-MSM-PAS, 2021 WL 5231949, at *8-9 (D.R.I. Nov. 10, 2021), adopted, 2022 WL 103322 (D.R.I. Jan. 11, 2022).  An ALJ's "extreme insistence on objective medical findings to corroborate subjective testimony of limitations of function because of pain" is error.  Dianne D. v. Berryhill, C.A. No. 18-312JJM, 2019 WL 2521840, at *7 (D.R.I. June 19, 2019) (quoting Avery v. Sec'y of Health & Human Servs., 797 F. 2d 19, 22 (1st Cir. 1986)), adopted by Text Order (D.R.I. July 5, 2019).

   **D.     Assessment of Claimant's Subjective Statements**

In addition to statements regarding pain, the ALJ must consider the claimant's other subjective statements regarding the limitations caused by symptoms.  Where an ALJ decides not to fully credit such subjective statements, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg v. Apfel, 26 F. Supp. 2d 303, 309 (D. Mass. 1998).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  However, in the absence of evidence that directly rebuts the claimant's testimony or presents some other reason to question its credibility, the ALJ must take the claimant's statements as true.  Sacilowski, 959 F.3d at 441.

### E.    Absenteeism

When the symptoms of an impairment or combination of impairments would cause the claimant periodically to be unable to attend work, it is reversible error if the ALJ fails specifically to assess the issue of absenteeism.  Amanda S. v. Berryhill, No. CV 18-0001-JJM, 2019 WL 1316979, at *6-7 (D.R.I. Mar. 22, 2019), accepted by Text Order (D.R.I. Apr. 8, 2019) (directing award of benefits), affirmed sub nom. Sacilowski, 959 F. 3d 431 (error to fail to consider probable absenteeism caused by migraines that recur despite medication).  Remand is similarly required if the ALJ relies on the findings of non-examining physician experts who did not address absenteeism because they did not see records establishing the sheer scope of claimant's many medical concerns.  Jessica S. v. Kijakazi, C.A. No. 21-75MSM, 2022 WL 522561, at *4-6 (D.R.I. Feb. 22, 2022), adopted, 2022 WL 834019 (D.R.I. Mar. 21, 2022) (non-examining experts "did not have access to a sufficiently developed record to permit them even to consider how the total number of medical appointments and hospitalizations would impact work attendance").  That is, whether at Step Two or at the RFC phase, it is error for an ALJ to ignore

the impact on the ability to work of multiple impairments each of which could impact

attendance, particularly where it is "undisputed that [the claimant's medical] issues required

ongoing treatment throughout [an extended period]." Sacilowski, 959 F.3d at 435-36; see 20

C.F.R. § 404.1523(b) (requirement for treatment of combined effect of multiple impairments).

And when a treating source's longtime familiarity with a claimant and her ailments confirms that

the absenteeism caused by the impairments is work-preclusive, reinforcing the already

overwhelming evidence of disability, remand for an award of benefits may be appropriate,

despite the claimant's capacity to engage in certain daily home activities. See id. at 440-41.

### F.    Appeals Council's Consideration of Newly Submitted Evidence

The Appeals Council must review a case if it receives "additional evidence that is new,

material, and relates to the period on or before the date of the hearing decision, and there is a

reasonable probability that the additional evidence would change the outcome of the decision."

20 C.F.R. § 404.970(a)(5); see Catherine I. v. Saul, C.A. No. 19-394WES, 2020 WL 2730907, at

*10 (D.R.I. May 26, 2020), adopted by Text Order (D.R.I. June 18, 2020).  When the Appeals

Council denies review, the already deferential substantial-evidence standard of review is

supplanted by the exceedingly narrow egregious error standard. Mills v. Apfel, 244 F.3d 1, 5

(1st Cir. 2001); Suliman v. Saul, CIVIL ACTION NO. 1:20-CV-11985-RWZ, 2022 WL

3108850, at *3 (D. Mass. Aug. 3, 2022).  The Appeals Council's denial of review is afforded "a

great deal of latitude" and "great deference." Mills, 244 F.3d at 5-6; David O. v. Berryhill, C.A.

No. 18-17WES, 2019 WL 2501884, at *14 (D.R.I. Feb. 13, 2019).  In this context, egregious has

been interpreted to mean "'[e]xtremely or remarkably bad; flagrant.'" Ortiz Rosado v. Barnhart,

340 F. Supp. 2d 63, 67 (D. Mass. 2004) (quoting BLACK'S LAW DICTIONARY (7th ed. 1999))

(alteration in original).  Nevertheless, review is appropriate where the mistake is "explicit" or

represents an "egregious error." <u>Mills</u>, 244 F.3d at 5.  For example, when a physician's record

contains material information that plainly relates back to the period on or before the ALJ's

decision, it would be egregious error to refuse to review the case based only on the finding that

the new evidence "does not relate to the period at issue" simply because the record is dated

shortly after the decision issued.  <u>Cabral v. Kijakazi</u>, Civil Action No. 21-10049-PBS, 2022 WL

1211335, at *1 (D. Mass. Apr. 25, 2022).

## III.  <u>Background and Analysis</u>

The focus of this case is on the chronic – and sometimes flaring – pain, fatigue and

probable absenteeism caused by the combined impact of Plaintiff's many serious medical

impairments.  Plaintiff is a "younger" individual with two years of college and many years of

work as a CNA.  Tr. 974, 1003-04, 1084-87.  Because of her impairments, during her final two to

three years of working, Plaintiff's longtime employer assigned her to scheduling duties.  Tr. 975.

When even this became too much, Plaintiff took FLMA leave; when it ran out, her employer

terminated her.  Tr. 975-76.  Her last day worked was July 6, 2018.  Tr. 977.  As reflected in the

medical record and acknowledged by the ALJ, Plaintiff suffers from an array of seemingly

unrelated impairments that cumulatively impact her ability to function.  These include chronic

kidney stones, recurring rhinosinusitis, migraines, fibromyalgia, depression and anxiety.  With

much of this evidence undisputed and overwhelming, and mindful that the Court's goal must be

to "ensure 'a just outcome' in Social Security disability claims," <u>Mary K. v. Berryhill</u>, 317 F.

Supp. 3d 664, 667 (D.R.I. 2018) (quoting <u>Santa v. Astrue</u>, 924 F. Supp. 2d 386, 391 (D.R.I.

2013)), I recommend that the case be remanded for an award of benefits.

### A.    **ALJ's Step Two Errors**

12

The Court's Step Two focus is on just three of the impairments – chronic kidney stones, chronic rhinosinusitis, and migraines – that the ALJ rejected as non-severe.[13]  As described below, I find that the reasons for the determination of non-severity as to each of them to be material error because, in formulating his RFC, the ALJ ignored the pain, fatigue and absenteeism that they caused.

<u>Chronic Kidney Stones</u>  Beginning in the pre-onset period when she was still working, albeit as a scheduler due to her impairments, Tr. 975, Plaintiff's medical record reflects a serious episode in November 2017 when she was diagnosed with kidney stones.  During this episode, Plaintiff returned to the hospital three times and ultimately was admitted for aggressive pain management (including morphine) and surgical intervention.  <u>E.g.</u>, Tr. 1209-10, 1539, 1582-84, 1718.  Her urologist opined that recovery from this episode would require three weeks out of work.  Tr. 1209.  There is a similar pre-onset episode in May 2018, when Plaintiff sought hospital emergency treatment resulting in morphine for pain control.  Tr. 1433.

This pattern is replicated repeatedly during and following the period in issue with episodes in February 2019, July 2019, October 2019, March 2020, April 2020 and May 2020.[14]  In each instance, Plaintiff was treated at a hospital, sometimes in the emergency room and

---

[13] In addition to these impairments, prior to and during the period in issue, Plaintiff also was diagnosed with and treated for several other unrelated impairments.  These include epilepsy/syncope (treated with anti-epileptic medication), Tr. 2534; carpal tunnel syndrome (treated with wrist splints), Tr. 2121, 2535; uterine pain and excess bleeding, with a recommendation for surgery postponed due to treatment of recurring kidney stones, Tr. 740, 753, 765, 2541, 2662; and gastro-esophageal disease, Tr. 1817-19.  The ALJ ended his examination of each of these impairments at Step Two.  Tr. 13-17.  While none of these in isolation appears to be severe, so that there is no Step Two error, I nevertheless find that the ALJ erred because he ignored the combined impact of their symptoms on Plaintiff's ability to work.  <u>See</u> <u>Caterino v. Berryhill</u>, 366 F. Supp. 3d 187, 194 (D. Mass. 2019) (even though impairments may be non-severe at Step Two, ALJ must consider cumulative effect of those impairments as sequential analysis proceeds); 20 C.F.R. § 404.1523 (whether severe or non-severe, ALJ must consider combined impact of impairments).

[14] During the two hospital encounters in July 2019, Plaintiff had symptoms of a stone but none was detected, although an ovarian cyst was noted.  Tr. 1856, 1860.  In March 2020, the diagnosis was urinary tract infection and pneumonia, as well as stones.  Tr. 2466-69, 2481.

sometimes by admission over more than one day, with the treatment including aggressive pain medication and surgical interventions.  E.g., Tr. 1277, 1303, 2272-74, 2361, 2454.

The ALJ's decision acknowledges all of this evidence, but instead of focusing on the cumulative impact of this chronic condition, it relies on Plaintiff's improvement at the end of each episode as reflected, for example, in a treating note reflecting Plaintiff's improvement following treatment for the episode in May 2020.  Tr. 16.  Based on this myopic perspective, the ALJ found that Plaintiff's "disorders of the urinary tract" did not persist as severe for at least twelve months and therefore are "not severe" at Step Two.  Similarly, the ALJ's RFC finding is based on the findings of non-examining consultants (which he found to be persuasive) who noted that Plaintiff had kidney stones but completely ignored their impact in their opinions.  Tr. 34-35. As a result, neither the non-examining experts nor the ALJ considered either the impact of the excruciating pain that occurred with these episodes or the absenteeism that would result from them.

Illustrating the error is the ALJ's emphasis in articulating that the reasons for his RFC include Plaintiff's lack of hospitalizations for purely psychiatric concerns or for fibromyalgia, ignoring entirely the sheer scope of hospital contact for chronic kidney stones and related urinary tract disorders.  Confirming that the ALJ's approach was erroneous is the medical evidence submitted to the Appeals Council, which reflects that this pattern of periodic multi-day hospital encounters, aggressive pain management and surgical interventions due to kidney stones continued unabated.  See, e.g., Tr. 238, 246, 466-70 (two hospital encounters in December 2020 for kidney stones with treatment including morphine); Tr. 108, 115, 143-44 (two hospital encounters in February 2021 for kidney stones with treatment including morphine and recommendation for surgery).

Chronic Rhinosinusitis/Perforated Septum/Asthma  The record reflects that, from at least 2017 and continuing throughout and after the period in issue, Plaintiff suffered from a mysterious impairment that caused chronic sinusitis, ear infections, respiratory obstructions, a perforated septum and pain, yet eluded a unifying diagnosis.  E.g., 1820, 2155.  For a time, Plaintiff was prescribed toxic drugs based on a tentative diagnosis of ANCA vasculitis, Tr. 2135, but that diagnosis was tentatively ruled out and the drugs were discontinued, while the symptoms persisted.  Tr. 2673.  This condition was treated by specialists in Rhode Island and at the Lahey Clinic in Boston.  E.g., Tr. 1804, 2673.  In addition to many out-patient encounters (resulting in the need to be absent from work), these symptoms required treatment with antibiotics, steroids and surgery.  E.g., Tr. 2134.

While Plaintiff was still working, a single episode caused by this condition resulted in the medical opinion that she could not work for almost two weeks.  Tr. 1820-22, 1826-27.  During the period in issue, treating providers repeatedly noted that this condition (and the medication prescribed to treat it) left Plaintiff so fatigued that she was unable to get out of bed.  Tr. 1826, 1833, 2155.  By September 2019, a surgical endoscopy detected a perforation of the septum presumptively caused by this condition.  Tr. 1863-64.  Dr. Alejandro Vazquez, a specialist who was involved with Plaintiff's treatment throughout the period covered by the record, opined that her "clinical picture" is "unusual," and "atypical."  Tr. 1867, 2670-73.  Towards the end of the period in issue (in September 2020), Dr. Vazquez noted that Plaintiff was again on a ten-day course of antibiotics and prednisone, reflecting a chronic and "problematic" pattern of "frequent flareups requiring treatment with antibiotics and steroids," and that there was a disagreement among specialists about whether surgery would be efficacious.  Tr. 2681 ("exacerbations of

15

chronic rhinosinusitis . . . lead to [her] requiring antibiotics and/or steroids approximately every 2 months.").

The ALJ's Step Two analysis of these symptoms suffers from the same error that tainted his analysis of chronic kidney stones; that is, he accepted the symptoms as undisputed but focused on the improvement following each flareup (and examined the asthma findings in isolation) to find that this chronic condition did not persist as severe for twelve months. Tr. 17. For the RFC, consistent with the non-examining experts who ignored this condition, except for asthma, the ALJ added environmental limitations to address asthma, but ignored the undisputed finding, for example, of Dr. Vazquez that, every two months, Plaintiff had suffered and would continue to suffer flareups and was recommending surgery. Tr. 2681; see, e.g., Tr. 2537-40 (episode of "bilateral severe maxillary pressure and frontal pressure" for over a week results in prescription for antibiotic and steroid). The materiality of this error is confirmed by Plaintiff's post-decision treating records, which reflect that at the very end of the period in issue, she underwent extensive nasal surgery, Tr. 727, followed by another endoscopy and bronchitis in January 2021. Tr. 797, 827-28.

Migraines  The ALJ acknowledged Plaintiff's longstanding impairment of migraines. Tr. 16-17. When taking only over-the-counter pain treatment, for example in December 2019, the migraines recurred twice a week, lasting all day and causing photophobia, nausea, dizziness, and blurred vision. Tr. 2113. With medications such as Topiramate, Imitrex or Sumatriptan, the ALJ noted that the frequency was two to four headaches per month with the need to lie down in a darkened room. Tr. 2529, 2532. For some periods, Plaintiff was able to manage with only two migraines per month treated with an over-the-counter medication. Tr. 2532. Despite these undisputed symptoms, the ALJ found that this frequency and intensity (despite medication) of

16

Plaintiff's migraines did not persist at a severe level for a continuous period of twelve months. Tr. 17. Therefore, the ALJ did not consider at all whether Plaintiff's residual migraines – at least two a month with the need to lie down in the dark for an unspecified amount of time – would impact Plaintiff's attendance at work.[15] This error also tainted the ALJ's RFC determination because both the non-examining experts and the ALJ ignored migraines and the absenteeism they would cause.

### B.   ALJ's Errors in Relying on Non-Examining Findings and Rejecting Treating Source Opinion of Plaintiff's Therapist

The ALJ's RFC finding is based on his cherry picking[16] of the administrative findings (which he found to be persuasive) of the four "DDS consultants," Drs. Hamel and Maloney at the initial phase, and Drs. Hughes and Callaghan on reconsideration. The focus of the decision is on the only impairments found by the ALJ to be severe – fibromyalgia, depression, anxiety and obesity, although the RFC analysis includes a rote recital that he "considered all symptoms," Tr. 19, mentions in passing Plaintiff's kidney stones and related urinary issues, as well as the treatment by otolaryngologists ("ENT") and contains a detailed description of Plaintiff's knee treatment. Tr. 19-35. However, with one exception, the non-examining expert physicians based

---

[15] During the ALJ hearing, Plaintiff testified that the migraines had been worse for about a month, increasing to two to three times per week. Tr. 980.

[16] The ALJ found that the non-examining experts' findings were all persuasive but due to "[unspecified] evidence presented at the hearing level, . . . require some slight modification." Tr. 35. The decision does not explain why some of their limitations were adopted and some were rejected. By way of example is Dr. Maloney's initial-phase exertional limitation to sedentary work, with a limitation on standing and walking to four hours and a limitation on pushing/pulling "secondary to carpal tunnel syndrome bilaterally and fibromyalgia pain." Tr. 1002-04. By contrast, on reconsideration, Dr. Callaghan opined to light exertional limitations, including six hours of standing and walking with no push/pull limits. Tr. 1010-13. With no reasons articulated why he chose one "persuasive" set of findings over the other, the ALJ based his RFC on light work with no push/pull limits. Tr. 19, 34-35. Based on my recommendation of remand for an award of benefits for other reasons, there is no need for the Court to determine whether this failure to explain how this conflict was resolved is a material error, in breach of the regulatory requirement that an ALJ must articulate the factors relied on to resolve conflicts among equally persuasive administrative findings in 20 C.F.R. § 404.1520c(b)(3). See Kelly B. R. v. Kijakazi, No. 2:20-cv-00339-JHR, 2022 WL 204634, at *4 (D. Me. Jan. 23, 2022) (no remand despite ALJ's failure to "make such findings on th[e] record").

their findings only on fibromyalgia, obesity, a history of syncope and asthma.  Tr. 1002-03, 1011-12.  The exception is the physician at the initial phase (Dr. Maloney) who found carpal tunnel syndrome to be an impairment resulting in limitations on pushing and pulling.  Tr. 1002. However, without explanation for how he resolved this conflict, the ALJ did not adopt this limitation in his RFC.  Tr. 19.[17]  The non-examining psychologists (Drs. Hamel and Hughes) focused on the severity of the depression and anxiety but took no notice of the impact of pain on Plaintiff's mental ability to function.  Tr. 1000-01, 1009-10.  Indeed, the psychologist at the initial phase (Dr. Hamel) expressly eschewed such reliance, noting that "claimant attributes her inability to work to medical factors [that is, pain and fatigue] rather than psychiatric ones."  Tr. 1001.

I find two reasons why the ALJ's reliance on the four DDS consultants is tainted by material error.  First and most significant is their failure to examine the combined impact of the sheer scope of Plaintiff's impairments, which result in repeated episodes of serious, sometimes excruciating pain and work-precluding treatment, including hospitalization and surgery.  As a result, they ignored (as did the ALJ) both the absenteeism that these impairments would cause, as well as the limiting effects of Plaintiff's ongoing struggle with pain.[18]  See Sacilowski, 959 F.3d at 440; SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'"); Dunn v. Colvin, Civil Action No. 15-cv-13390, 2016 WL 4435079,

---

[17] The vocational expert confirmed that this limitation would eliminate all but one of the jobs to which she opined as well as that the remaining job ("call-out operator") is so limited in available numbers (6450 jobs in the national economy) as to raise a question whether it alone could support a finding of no disability.  Tr. 993-94.

[18] The Commissioner argues that the non-examining expert psychologist on reconsideration considered absenteeism in that he found that Plaintiff was "not significantly limited" in her ability to "maintain regular attendance." Tr.1012.  I disagree – the expert himself explained this finding as based solely on distractibility with no consideration of absenteeism.  Tr. 1012-13.

at *12 (D. Mass. Aug. 19, 2016) (remand warranted because there was no indication the ALJ considered cumulative effect of claimant's severe and non-severe impairments, including migraines).

Second, the non-examining experts completed their work on May 6, 2020. After that date, the records swelled with the addition of more than 250 pages of treating records, including records reflecting (during this six month period) at least two more instances of hospital treatment for stones, pneumonia and rhinitis, Tr. 2452-2524, 2573-76; an abnormal EEG resulting in a prescription for antiepileptic medication and the new neurological symptom of observed tremor, Tr. 2535, 2529; a CT showing severe sinusitis and an occlusion, Tr. 2584; an opinion that Plaintiff's chronic upper respiratory issues may require surgery, Tr. 2681; repeated complaints of pain attributable to endometriosis and fibroids, Tr. 2648, 2685; worsening fibromyalgia, Tr. 2541; and complaint of increased depression, Tr. 2669. The ALJ performed a lay assessment of this evidence, focusing on the lack of hospitalizations for fibromyalgia or psychiatric symptoms (and ignoring those for kidney stones and chronic rhinosinusitis) and on the improvement of pain with medication (but ignoring that those improvements occurred, for example, after the passing of a kidney stone). Tr. 35.

This approach breaches the principle that an ALJ should not render a medical opinion in the face of conflicting and inconsistent medical evidence without the assistance of a medical expert. Santiago v. Sec'y of Health & Human Servs., 944 F.2d 1, 7 (1st Cir. 1991) (per curiam). Thus, it was error for the ALJ to deny benefits in reliance on the non-examining expert physicians and psychologists who, despite expertise, were not privy to parts of the medical record that evidence potential worsening and that clearly support the claimed limitations. See Padilla v. Barnhart, 186 F. App'x. 19, 22-23 (1st Cir. 2006) (per curiam); Virgen C. v. Berryhill,

19

C.A No. 16-480 WES, 2018 WL 4693954, at *3 (D.R.I. Sept. 30, 2018).  In such circumstances, without procuring testimony from a medical expert who has interpreted the entire medical file, the ALJ is substituting his lay judgment for a necessary expert medical opinion; the resulting decision is subject to remand because it is not supported by substantial evidence.  See Jessica S. v. Kijakazi, C.A. No. 21-75MSM, 2022 WL 522561, at *3 (D.R.I. Feb. 22, 2022), adopted, 2022 WL 834019 (D.R.I. Mar. 21, 2022).

Serious error also taints the ALJ's rejection of the detailed RFC opinion provided by Plaintiff's longtime treating therapist, Ms. Debbie Fleet, LICSW.  The principal focus of Ms. Fleet's opinion is on the impact of pain and fatigue (including Plaintiff's difficulty in getting out of bed) on Plaintiff's ability to function.  The Fleet opinion concludes that Plaintiff would be absent or have to start late or leave early more than four days per month.[19]

The foundation for the ALJ's rejection of the Fleet opinion is difficult to discern.  The decision states:

> [The Fleet opinion] is inconsistent with limited supported clinical findings.  Ms. Fleet's own reports fail to reveal the type of significant clinical abnormalities one would expect if the claimant were in fact disabled due to her psychiatric symptoms, and she did not provide any explanation for the absence of support in her treatment records. . . . [T]here is no evidence of frequent visits to the emergency department due to the claimant's psychiatric symptoms or frequent and extended psychiatric hospitalizations.

Tr. 33-34.  In the context of this case, this reason makes little sense.  The Fleet opinion is entirely consistent with Ms. Fleet's notations and clinical findings in that her treating notes repeatedly reflect Plaintiff's reports, corroborated by Ms. Fleet's recorded observations, of Plaintiff's pain and fatigue and their impact on her.  See Tr. 2206 ("She sleeps constantly . . . She is in constant pain due to multiple & chronic medical issues"); Tr. 2264 ("[Client] continues to appear

---

[19] The vocational expert testified that more than one day of absence per month or more than ten percent of the time off task would preclude all work.  Tr. 994.

uncomfortable and responds to open ended questions with one word responses"); Tr. 2270 ("symptoms remain high"); Tr. 2650 ("reports excruciating pain due to multiple kidney stones . . . [s]he had trouble staying still in this [appointment]"); Tr. 2660 ("observed being in a considerable amount of pain . . . had been lying down prior to this appointment"); Tr. 2669 ("She has been in bed since Friday.  Reports increased depression.").  Ms. Fleet's opinion is also consistent with the principle that the disability analysis must take cognizance of the impact of the claimant's <u>physical</u> condition on her mental capacity.  <u>See</u> <u>Audrey P. v. Saul</u>, No. CV 20-92MSM, 2021 WL 76751, at *11 (D.R.I. Jan. 8, 2021), <u>adopted</u>, 2021 WL 309233 (D.R.I. Jan. 29, 2021) (citing SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996)).  Thus, by sustaining a myopic focus on Plaintiff's relatively conservative mental health treatment for depression and anxiety, the ALJ ignored the impact of Plaintiff's physical pain and fatigue on her ability to function in a work setting.  <u>See</u> <u>id.</u>

I find that the Fleet opinion is well supported by Ms. Fleet's many clinical observations of Plaintiff's pain and fatigue, including her specific observations of the impact of pain.  I further find that the Fleet opinion is entirely consistent with the balance of the treating record, which reflects the clinical observations of an array of treating sources that Plaintiff suffered from chronic pain due to fibromyalgia punctuated by regular and severe flareups of pain due to kidney stones, chronic rhinosinusitis and migraines.  The ALJ's finding that the opinion is not persuasive is erroneous.

## C.   ALJ's Error in Discounting Plaintiff's Subjective Statements of Pain and Fatigue

The ALJ's decision steeply discounts Plaintiff's subjective statements about the pain and fatigue for three reasons.  First, he finds "significant inconsistencies between [her] subjective allegations" and her activities of daily living, including the ability to perform basic hygiene, to

drive to medical appointments and to perform limited chores.  Tr. 22.  Second, he relies on the observation of "no apparent distress" during three evaluations despite the diagnosis of fibromyalgia.  Id.  And third, he notes that, despite diagnoses of depression and anxiety, Plaintiff did not require hospital treatment for psychiatric symptoms.  Id.  None of these reasons withstands scrutiny.

For starters, the ALJ ignores the ample – indeed overwhelming – record evidence of objective observations corroborating Plaintiff's subjective statements about pain and fatigue. See, e.g., Tr. 1806-07 (Lahey Clinic rheumatologist observes "significant[]" fibromyalgia trigger points resulting in recommendation of referral for pain management); Tr. 1843 (primary care physician observes "[s]he cannot stay out of bed a whole day without being exhausted and in pain."); Tr. 1869-70 (West Bay Psychiatric Associates psychiatric nurse finds fatigue that "has a lot to do [with] pain"); Tr. 2155, 2163 (Care New England rheumatologist records impressions: "having increase pain diffusely, she has fatigue and is feeling depressed since she lost her job [s]he hardly gets out of bed" and "diffuse pain and fatigue"); Tr. 2264, 2650, 2660 (Ms. Fleet observes "[client] continues to appear uncomfortable and responds to open ended questions with one word responses"; "[client] reports . . . excruciating pain . . . had trouble staying still in this appointment" and "[client]. . . observed being in a considerable amount of pain"); Tr. 2694 (West Bay Psychiatric Associates therapist notes, "[patient] in pain rocking in chair").  Nor is there anything in the record that contradicts Plaintiff's statements.

The ALJ's reliance on low level activities of daily living replicates the error condemned in Sacilowski, 959 F.3d at 440 ("claimant may have the capacity to engage in certain daily, 'home activities,' but still be unable to function in a workplace environment.") (citation omitted). Similarly, the ALJ's reliance on the lack of distress at three isolated medical appointments fails

as a supported reason when each exhibit to which he cites is examined.  As to the first of the three exhibits to which he cites, it contains no such statement.  Tr. 2117-18.  As to the second, it couples the observation of no distress with the clinical observations of "fibromyalgia trigger points: [s]ignificantly positive and symmetric," tenderness, strength loss and the impression of "[p]ain amplification syndrome."  Tr. 1806-07.  As to the third, it is the observation of a nurse who was following up on Plaintiff's tolerance for the medications prescribed for seizures and migraines.  Tr. 2534.  In any event, such observations prove little in a case where the evidence is plain; what matters most are the sheer number of <u>flareups</u> in acute pain caused by chronic kidney stones, chronic rhinosinusitis and migraines.  Finally, the ALJ's observation that Plaintiff was never hospitalized for depression and anxiety is clear error when viewed in the context of this record of repeated hospital-based treatment.

An ALJ may not discount a claimant's subjective statements despite the absence of direct evidence to rebut them.  <u>Sacilowski</u>, 959 F.3d at 441.  Here there is ample objective support for, and nothing (direct or indirect) to contradict, Plaintiff's subjective claims of pain and fatigue.  Therefore, the ALJ's rejection of them is error.  <u>See id.</u> (error to discount claimant's subjective statements despite the absence of direct evidence to rebut them).

### D.    Appeals Council's Egregious Error

As recited above, the evidence submitted to the Appeals Council confirms several of the ALJ's errors.  These materials make plain, for example, the fallacy in the ALJ's Step Two reasoning that Plaintiff's impairments did not persist for twelve months; that it was error to ignore the total amount of absenteeism caused by the combination of all of Plaintiff's severe and non-severe impairments; that it was error to completely ignore Plaintiff's complaints of severe pain with menses; and that it was error to conclude that chronic rhinosinusitis would not shortly

result in more surgery.  The problem is illustrated by a treating record from Plaintiff's primary

care physician dated December 20, 2020, less than three weeks after the ALJ's decision; it looks

back to the period in issue and summarizes the combined impact of just some of Plaintiff's many

impairments:

> [Plaintiff] has been to the hospital twice for back pain.  She ended up having
> py[el]onephritis and has kidney stones as well . . . she is taking amoxicillin for
> her ear.  She switched her gyn again finally. . . . She is very depressed . . . she has
> no energy anymore.  She won't shower for a few days and does not get out of bed.
> . . . . Her memory is not as good anymore.  She is getting tremors in her hands and
> she is seeing the neurologist for this.  She cannot gets words out sometimes and
> the neurologist knows about that and she will see him tomorrow.[]  Her legs are
> giving out on her again. . . . She just had another sinus surgery last month . . . She
> is still going to the rheumatologist . . . . She is treating her for fibromyalgia and is
> on lyrica for that.  She is having a lot of pain in her back from her kidney
> infection.

Tr. 783.  It was error for the Appeals Council to have rejected all of this evidence clearly bearing

on the period in issue and plainly showing a reasonable probability it would change the outcome

of the decision.  In the circumstance of this case, I find the error to be egregious.

### E.      Recommendation

The errors that I have found in the preceding analysis are material and require remand.

The issue is whether that remand is for further proceedings or for an award of benefits.  See

Sacilowski, 959 F.3d at 436-37.  By focusing just on the undisputed evidence of absenteeism that

would be caused by the combination of Plaintiff's chronic kidney stones, chronic rhinosinusitis

and migraines,[20] as those conditions are described by the ALJ, coupled with the overwhelming

---

[20] To illustrate by focusing just on 2019, in that year, Plaintiff suffered three multi-day episodes of serious flareups with kidney stones that involved a total of six trips to the hospital.  The pre-onset records reveal that just one such episode resulted in a physician's opinion that Plaintiff would be out of work for three weeks.  Tr. 1209.  Also during 2019, Plaintiff's chronic rhinosinusitis led to one hospitalization and approximately six episodes requiring antibiotics and steroids.  E.g., Tr. 1863.  The pre-onset records reveal that one such episode resulted in a physician's opinion that Plaintiff would be out of work for two weeks.  Tr. 1820, 1827.  And during 2019, Plaintiff was suffering from a minimum of two migraines a month which associated photophobia, nausea, dizziness and blurred vision.  E.g., Tr. 2534, 2613, 2618.  Cumulatively, this would mean missing all or part of weeks, if not months, of work a year.  As the vocational expert testified, this level of absenteeism clearly precludes all work.  See Tr. 994.

24

and undisputed evidence of pain and fatigue, and the evidence of its impact as reflected in Ms. Fleet's opinion, as well as on the vocational expert's testimony that more than one day a month of absence is work-preclusive, I find that this is one of the unusual cases where an award of benefits is appropriate.  See Randy M. v. Kijakazi, No. CV 20-329JJM, 2021 WL 4551141, at *11 (D.R.I. Oct. 5, 2021).

**IV.** **Conclusion**

Based on the foregoing, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 10) be GRANTED and that the Court remand the matter for an award of benefits consistent with these findings.  I further recommend that Commissioner's Motion to Affirm the Commissioner's Decision (ECF No. 13) be DENIED.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
January 24, 2023